**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                     )
DATA SUPPORT ASSOCIATES, INC.        )
                                     )
                                     )
          Plaintiff,                 )
                                     ) CIVIL ACTION NO.
v.                                   ) 3:02 CV 1418 (DJS)
                                     )
                                     )
MGE UPS SYSTEMS, INC.                )
                                     )
          Defendant.                 )
_____) JANUARY 26, 2004

## SECOND AMENDED COMPLAINT

### The Parties

1. Plaintiff Data Support Associates, Inc. ("DSA") is a corporation organized and existing pursuant to the laws of the State of Connecticut with its principal place of business in the State of Connecticut. Plaintiff is therefore a citizen of the State of Connecticut for diversity jurisdiction purposes.

2. Defendant MGE UPS Systems, Inc. ("MGE") is, upon information and belief, a corporation organized and existing pursuant to the laws of the State of California with its principal place of business in the State of

California. MGE is a citizen of the State of California for diversity jurisdiction purposes.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. Section 1332 in that there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of interest and/or costs, exceeds $75,000.00.

4. Venue is proper in this District pursuant to 28 U.S.C. Section 1391.

### First Cause of Action

(Breach of Purchase Order under the Connecticut Commercial Code, Article 2 of Title 42a)

5. DSA is a 30 year old company specializing in electrical/mechanical products and services related to the critical power and environmental fields.

6. DSA serves the needs of end users for their mission critical electrical, HVAC, process, broadcasting, and data processing needs.

7. DSA also provides technical support services related to the direct application of the products it sells.

2

8. DSA also provides installation supervision, service and maintenance agreements for all of the products it sells. DSA provides solutions to protect mission critical systems, provide reliable power, and ensure adequate environmental conditioning.

9. DSA provides "turn key" services to end users such as medical facilities, data centers, financial institutions and others. That is, an end user contracts with DSA to have DSA build, install, and prepare a power management system suitable for that end user's need. In this regard, DSA acts as a designer and consultant.

10. In this capacity, DSA also buys and resells the products of others, including MGE.

11. MGE is a supplier of power quality solutions designed to increase the availability and uptime of any mission-critical application or process. MGE is a supplier of Uninterruptible Power Supplies (UPS), Static Transfer Switches (STS), Power Distribution Units (PDU), harmonic filters, surge suppressors, inverters, power conditioner, and power Management software. MGE also provides site audits, remote supervision of installed equipment, maintenance contracts, and training.

12. MGE is a reseller and/or distributor of the products of other companies. That is, MGE is not a manufacturer, but a "middleman" or supplier.

13. In or around early 2000, DSA was seeking to be awarded a contract to provide power management systems at several data centers operated by Globix Corporation ("Globix").

14. In that regard, DSA sought out a proposal from MGE to provide uninterruptible power system protection for the Globix sites (the "MGE System").

15. A key element of the MGE System is the battery system ("Battery System").

16. MGE is a reseller/distributor for, among other things, batteries manufactured by a company known as Yuasa and/or Enersys.

17. DSA provided MGE with the basic specifications for the Battery System, as dictated by the needs of DSA's customer, Globix.

18. A specialized engineering firm developed these general specifications for the Battery System to meet the needs of Globix, DSA's customer.

19. Based on DSA's request and the general specifications provided by DSA, MGE delivered a Bill-Of-Material dated April 7, 2000 to DSA ("BOM")

(A copy of the BOM is attached hereto as Exhibit A).

20. The BOM operates as MGE's bid for the materials requested by DSA and specifically identified all of the goods and services that MGE was to provide to DSA for the Globix job.

21. The BOM specifically identified the Battery System and specific specifications (the "Specifications") to meet the needs of DSA:

> **10 minute 20-year sealed cell Stackable battery system** to support a 720kW inverter load consisting of the following:
>
> Yuasa Battery System consisting of two hundred forty (240) DDS-125-31 stackable sealed lead acid batteries assembled in steel encased polypropylene flame retardant jars. Absorbed glass mat, calcium alloy grid battery rated at 3.168KW per cell (753.9kWB) at ten (10) minutes rate to 1.67vpc in 1.3 S.G. at 77 degrees F. The cells are mounted in an epoxy coated steel frame and shipped complete with lead plated copper inter-unit connectors; grade 316 stainless steel connector nuts, bolts, and washers; cell number set; NO-ox grease and an O & I manual.

22. Pursuant to the BOM, as part of the MGE System, MGE was also to provide certain support materials specially designed and built for the Battery System such as battery monitors, spill containment kits and spill cleanup and disposal kits (the "Collateral Materials").

23. Globix awarded the contract to DSA in or around March, 2000.

24. In or around April, 2000, after being awarded the Globix contract, DSA

5

        proceeded to procure the materials it needed to fulfill the contract, including the MGE System.

25. In this regard, in or around April, 2000, DSA and MGE entered into a certain Purchase Order ("PO") (A copy of the PO is attached hereto as Exhibit B). The PO and the BOM incorporate the Specifications by reference.

26. The PO is a valid binding contract supported by adequate consideration and DSA fully performed there under.

27. The PO provides, among other things, that DSA shall have the right to demand and recover from MGE any and all fees and costs, including attorney's fees, in the enforcement of the terms and conditions thereof, or in recovering damages by reason of MGE's breach of any such terms and conditions.

28. The PO provides for MGE to deliver the MGE System, including the Battery System and the Collateral Materials.

29. Each battery in the Battery System cost $140,588.20. The Battery System, though originally planned to contain fifty (50) batteries, ultimately contained thirty-nine (39) batteries for a total cost of $5,482,939.00, or

$140,588.20 each.

30. The Collateral Materials consisted of 50 custom battery monitors at the price of $14,988.00 each ($749,400.00 total) and 30 custom spill containment systems at $4,568.50 each ($137,055.00). The total price for the Collateral Materials was thus $886,455.00.

31. DSA paid MGE in full for the Battery System and the Collateral Materials. DSA has paid a total of $6,369,394.00 for the Battery System and the Collateral Materials.

32. After being paid in full for the Battery System and Collateral Materials, MGE undertook to procure the Battery System and Collateral Materials from its supplier, Yuasa and/or Enersys.

33. In turn, when Yuasa and/or Enersys completed manufacture of the Battery System and Collateral Materials, it delivered the Battery System and Collateral Materials to MGE.

34. Thereafter, MGE stored the Battery System and Collateral Materials until such time as the Battery System could be inspected for conformity with the Specifications.

35. Thereafter, DSA inspected and tested the Battery System in accordance

with the PO.

36. Upon completing its inspection, DSA determined that the Battery System did not comply with the Specifications and/or did not materially comply with the Specifications. That is, DSA determined that the Battery System failed to conform to the BOM and the PO.

37. Because MGE did not deliver a Battery System that conforms to the contract and/or the Specifications in the PO and the BOM, DSA has neither need nor use for the Collateral Materials and has rejected the same and/or revoked its acceptance of the same.

38. MGE breached its obligations under the BOM and the PO by failing to deliver a Battery System that materially conforms to the Specifications incorporated into the BOM and the PO.

39. DSA timely and rightfully rejected the Battery System and/or justifiably revoked its acceptance of the Battery System.

40. Despite demand, MGE has failed, neglected and/or refused to acknowledge DSA's rightful rejection and/or justifiable revocation of acceptance and has failed, neglected, and/or refused to accept return of the Battery System.

8

41. As a result of the foregoing conduct, MGE is in breach of the BOM and the PO, and DSA has suffered damages for which MGE is liable.

42. As a result of the foregoing conduct of MGE, DSA is entitled to damages for breach of contract under the BOM and the PO and is entitled to buyer's remedies under Article 2 of Title 42a of the Connecticut General Statutes.

**Second Cause of Action**

(Breach of Sales Representative Agreement and Master Sales Representative Agreements)

43. Plaintiff hereby repeats and realleges paragraphs 1-12 of this Complaint as if fully set forth herein.

44. On or about November 1, 1996, MGE, then known as EPE Technologies, Inc., and DSA entered into a certain Sales Representative Agreement (the "First Rep Agreement").

45. MGE and DSA modified the First Rep Agreement from time to time. A copy of the First Rep Agreement, with various amendments, is attached hereto as Exhibit C.

46. MGE and DSA, on or about April 9, 2001, superseded the First Rep

Agreement by entering into a certain Master Sales Representative Agreement ("Second Rep Agreement"). A copy of the Second Rep Agreement is attached hereto as Exhibit D. The First Rep Agreement and the Second Rep Agreements are referred to herein below as the "Rep Agreements".

47. Pursuant to the Rep Agreements, MGE appointed DSA as a non-exclusive, independent sales representative for MGE products ("Products") within a certain territory.

48. Pursuant to the Rep Agreements, DSA was to, and did, sell MGE Products to end users and MGE would issues invoices to and collect payments from those end users.

49. Under the Rep Agreements, DSA was entitled to commissions for sales of MGE Products ("Commissions").

50. From time to time from 1996 until September, 2002, DSA sold MGE Products to end users pursuant to the Rep Agreements.

51. On each sale DSA made pursuant to the Rep Agreements, MGE owed DSA Commissions in accordance with the Commissions' rates set forth in the Rep Agreements.

52. On or about September 7, 2002, MGE terminated the Rep Agreements.

53. At the time of the termination of the Rep Agreements, MGE owed DSA Commissions under the Rep Agreement.

54. Despite demand, MGE has failed, refused, and neglected to pay DSA the Commissions due and owing.

55. As a result of the foregoing conduct of MGE, DSA has suffered damages.

WHEREFORE, the Plaintiff claims as to all applicable causes of action:

1. Damages;

2. All remedies afforded to buyers pursuant to Article 2 of Title 42a of the Connecticut General Statutes, including without limitation, consequential and incidental damages;

3. Interest;

4. Attorney's fees and costs pursuant to the PO;

5. Costs; and

6. Such other and further equitable relief as may be required.

        **THE PLAINTIFF, DATA SUPPORT ASSOCIATES, INC.**

        By    /s/ Gary S. Klein_____
            Gary S. Klein (ct 09827)
            Sandak Hennessey & Greco, LLP
            970 Summer Street
            Stamford, CT  06905
            (203) 425-4200
            (203) 325-8608 (fax)
            gklein@shglaw.com
            Its Attorneys

**CERTIFICATION**

I certify that a copy of the foregoing was sent via first class mail, postage prepaid on this January 26, 2004 to:

Michael P. Shea, Esq.
Day Berry & Howard
CityPlace I
Hartford, CT 06103

Bradford S. Babbitt, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

Daniel B. Huyett, Esq.
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679

_____/s/ Gary S. Klein_____
Gary S. Klein

13