**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DATA SUPPORT ASSOCIATES, INC | : | CIVIL ACTION NO. |
|     Plaintiff, | : | |
| VS. | : | |
| | : | 3:02 CV 1418 (DJS) |
| MGE UPS SYSTEMS, INC. | : | |
|     Defendant. | : | |
| | : | |
| | : | |
| | : | |
| MGE UPS SYSTEMS, INC. | : | |
|     Third Party Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| ENERSYS, INC., | : | |
|     Third Party Defendant. | : | |
| | : | MARCH 15, 2004 |
| | : | |

**PLAINTIFF'S MEMORANDUM REGARDING EVIDENTIARY PROBLEMS[1]**

**ARGUMENT**

**I.    Enersys' Tampering with the Batteries Renders DSA's Treatment of the Batteries Irrelevant.**

Plaintiff Data Support Associates, Inc.'s ("DSA") first cause of action seeks

damages and buyer's remedies under Connecticut's version of Article 2 of the Uniform

Commercial Code for failure of MGE UPS Systems, Inc. ("MGE") to deliver industrial

---

[1] Plaintiff submits this Memorandum pursuant to the Court's Joint Trial Memorandum Order. Plaintiff reserves the right to object to evidence as presented at trial and does not waive any objections by filing this Memorandum.

battery systems (the "Battery Systems") that conform to the specifications and requirements of DSA set forth in its purchase order (the "Purchase Order") and Bill of Materials (the "Bill of Materials").[2] DSA purchased 39 Battery Systems, 5 of which were tested for compliance with the Purchase Order and Bill of Materials (the "Globix Batteries") and 34 of which were stored for future use and never tested for compliance (the "Stored Batteries") with the Bill of Materials or Purchase Order.  DSA timely rejected the Battery Systems in May 2002 based upon the acceptance testing performed on the Globix Batteries in late April 2002.

MGE and Enersys will attempt to argue that DSA's handling, storage, and/or maintenance of the Stored Batteries caused any non-compliance with the specifications or other failure of the Stored Batteries.  In a stunning admission that the battery strings did not conform to the Plaintiff's specifications, Enersys, the Battery Systems' manufacturer, secretly tampered with the Stored Batteries shortly after DSA rejected them, changing their physical and chemical make-up.  Prior to this litigation commencing, but *after demand had been made by DSA on MGE and on Enersys by MGE*, Enersys secretly entered the storage facility where the Stored Batteries were stored and altered their chemical and physical characteristics.  By doing so, Enersys secretly

---

[2] Third Party Defendant Enersys, Inc. ("Enersys") manufactured the Battery Systems for MGE.

prohibited MGE and DSA from ever testing the Stored Batteries to determine their compliance with the specifications of the Bill of Materials and/or the Purchase Order. Since Enersys' conduct rendered it impossible to determine if the Stored Batteries met the specifications, then DSA's treatment of the Stored Batteries is irrelevant to the issues in this case and/or is unfairly prejudicial. Therefore, the Court should preclude any evidence of the treatment of the Stored Batteries prior to the date of DSA's rejection.

II.  **THE COURT SHOULD PRECLUDE ANY EVIDENCE RELATING TO PAYMENTS BY GLOBIX CORPORATION TO PLAINTIFF AND/OR THE SETTLEMENT OF ANY CLAIMS AS BETWEEN GLOBIX AND PLAINTIFF.**

The claims and counterclaims in this matter relate to two distinct issues. First, did the Battery Systems meet the Plaintiff's specifications and requirements. Second, when the relationship between DSA and MGE ended, how much money did MGE owe DSA or vice-versa in light of the commercial relationship between the two parties. Defendants will attempt to muddy the water and attempt to present unfairly prejudicial evidence against DSA that shows that DSA received substantial monies and equipment from Globix, DSA's customer and a non-party, as a settlement of a dispute between Globix and DSA, completely unrelated to this case.

MGE will attempt to offer evidence to show that despite its claims in this case, DSA collected approximately $25,000,000.00 from Globix in the overall transaction.

This fact is totally unrelated to whether the 39 Battery Systems met the required specifications and is also unrelated to the commercial claims in Plaintiff's Second Cause of Action and in the Counterclaims. In addition, DSA's original agreement with Globix called for payments of some $52,000,000.00. DSA only received half of the contract amount. Thus, DSA lost substantial profits on the deal. However, nothing about the Globix/DSA financial relationship bears on the relevant issues in this case. The Globix/DSA relationship has no bearing on whether the Battery Systems met the required specifications and no bearing on the commercial claims flowing back and forth between DSA and MGE. The entire line of evidence is irrelevant.

In addition, the complicated financial relationship between Globix and DSA will add nothing to the jury's understanding of the issues in the case. Rather, it will simply confuse the jury, add unnecessary length to the trial and create a trial within a trial as to how much money was exchanged between Globix and DSA. DSA had a direct relationship with MGE in which MGE sold DSA the Battery Systems. DSA rejected the Battery Systems. The only issues for the trier of fact (on the First Cause of Action) are whether MGE tendered Battery Systems that complied with the requirements, whether DSA accepted the batteries, and what DSA's damages are. Issues surrounding the relationship between Globix and DSA are irrelevant and unfairly prejudicial.

4

Finally, the settlement of the DSA/Globix relationship is inadmissible under Fed. R. Ev. 408, in that the entire line of evidence relates to a settlement between those parties. *American Soc. of Composers v. Showtime*, 912 F.2d 563, 580 (2d Cir. 1990); Fed. R. Ev. 408. Evidence of settlement agreements, even between non-parties, is inadmissible and the Court should therefore preclude the Defendants from offering the same.

III. **THE COURT SHOULD PRECLUDE MGE FROM OFFERING THE SECURED PROMISSORY NOTE INTO EVIDENCE.**

In its Second Counterclaim, MGE seeks damages against DSA for failure to pay a certain Secured Promissory Note (the "Note"). The evidence will show that the Note never became "live"—an operative document--because MGE failed to comply with a condition precedent for the Note to be active. In addition, the Note is not a complete document in that MGE intends to offer it without all of its provisions.

The Note is dated August 8, 2001. The evidence will show that DSA signed the Note and sent it to MGE on August 8, 2001 via Federal Express with an addendum in the form of a cover letter (the "Addendum"). The Addendum provides, in part:

> [W]e enclose the Note to you conditioned upon your confirmation of the foregoing commitment. Please acknowledge your confirmation by signing and returning the enclosed counterpart of this letter to via overnight mail. If you are unwilling to sign and return the counterpart copy of this letter, please return the enclosed Note to us in the same fashion.

5

The evidence will show that MGE never signed and returned the Addendum to DSA. In fact, the Note attached to MGE's counterclaims and that MGE intends to offer into evidence does not have the Addendum attached. Therefore, the Note is void and unenforceable.

Under Connecticut law, if a condition precedent is not fulfilled, the right to enforce a contract does not come into existence. *Maloney v. PCRE, LLC*, 68 Conn. App. 727, 739 (2002). Here, the Addendum clearly provides that in order for MGE to keep and enforce the Note, it was required to sign the Addendum. The Note was "conditioned upon" MGE's agreement to the matters discussed in the Addendum. MGE never met the conditions for the Note's delivery. Therefore, MGE has no right to enforce the Note. In addition, the Note, without the Addendum, is not a complete document. Pursuant to Fed. R. Evidence 106, the Note without the Addendum is inadmissible. MGE is precluded from offering incomplete and misleading documents.

**IV.    THE COURT SHOULD PRECLUDE MGE FROM OFFERING EVIDENCE THAT DSA IS LIABLE ON THE SUBLEASE IN THE FOURTH COUNTERCLAIM.**

In its Fourth Counterclaim, MGE asserts that DSA is liable for rent under a certain Sublease (the "Sublease") for the months of September 2002 through April 30, 2004. There is no dispute in this case that from 1996 to September 7, 2002, DSA and

6

MGE had a manufacturer/manufacturer's representative relationship governed by a certain Rep Agreement referenced in DSA Second Cause of Action. There is also no dispute that MGE terminated the Rep Agreement on or about September 7, 2002. The Rep Agreement provides, in part:

> 8.4. Neither party shall be liable to the other, because of such termination…on account of expenditures, investments, *leases*, or any type of commitments made in connection with the business of either caused by the termination of this Agreement.

(emphasis added). Thus, when MGE terminated the Rep Agreement on September 7, 2002, it effectively released DSA from any liability under the Sublease. Section 8.4 of the Rep Agreement clearly provides that when the Rep Agreement is terminated, neither MGE nor DSA has any liability to the other for any "leases." By operation of the documents, DSA has no further liability on the Sublease. Therefore, the Court should preclude MGE from offering evidence in support of damages under the Sublease. In light of the terms of the operative documents, MGE's damages relating to the Sublease are not relevant and/or are unfairly prejudicial.

### V.   THE COURT SHOULD PRECLUDE MGE AND ENERSYS FROM OFFERING THE REPORTS OF THEIR EXPERTS.

"Reports stating an expert opinion are not admissible without the preparer being present to testify as to his qualifications as an expert and to be cross-examined on the

substance." *Tokio Marine & Fire Ins., Ltd. v. Norfolk & Western Ry. Co.*, 172 F.3d 44, at

\*\*4 (4th Cir. 1999)(table case)(citing *Forward Communications Corp. v. United States*,

608 F.2d 485, 511 (Ct. Cl. 1979); *Fortier v. State Farm Mut. Auto Ins. Co.*, 2000 WL

1059772 (E.D. La. 2000); *Imazio Nursery, Inc. v. Dania Greenhouses, Inc.,* 1997 WL

195434 (N.D. Cal. 1997). In order to present expert evidence, MGE and Enersys must

present their expert witnesses in Court.

**VI.    THE COURT SHOULD PRECLUDE ANY EVIDENCE REGARDING THE PERFORMANCE OF THE BATTERIES FOR SPECIFICATIONS OTHER THAN THOSE REQUIRED BY PLAINTIFF AND/OR AS INDIVIDUAL CELLS UNCONNECTED TO A BATTERY SYSTEM AS SET FORTH IN THE SPECIFICATIONS, BILL OF MATERIALS AND/OR PURCHASE ORDER.**

The only relevant inquiry with respect to whether the Battery Systems complied with the Plaintiff's requirements is whether the Battery Systems—as ***battery systems and not individual batteries***—met DSA's specifications for the precise use set forth in the Bill of Materials and Purchase Order. MGE and Enersys may attempt to offer factual and expert evidence regarding (1) the performance of the individual battery cells, (2) the performance of the battery cells and Battery Systems under laboratory conditions, (3) the performance of the battery cells and Battery Systems for uses other than those stated in the Bill of Materials or Purchase Order, (4) hypotheses, supposition, and speculation about the performance of the Battery Systems under unknown conditions, and/or (5) the

8

propriety of Enersys' treatment of the warranty. However, all of these lines of inquiry are not relevant and/or their relevance is outweighed by the unfair prejudice they will cause.

In this case, DSA has rejected the goods that MGE delivered on the basis that the goods delivered did not comply with the Bill of Materials and/or Purchase Order. As stated in the Second Amended Complaint, under the Purchase Order and the Bill of Materials, MGE was required to deliver Battery Systems that provided a certain level of reserve power for particular UPS Systems. The only relevant inquiry for the jury is whether MGE tendered goods that conformed to the Purchase Order and Bill of Materials. Therefore, these other areas of inquiry do not offer any relevant information and have no basis for being offered into evidence.

**THE PLAINTIFF, DATA SUPPORT ASSOCIATES, INC.**

By   /s/ Gary S. Klein
    Gary S. Klein (ct 09827)
    Sandak Hennessey & Greco, LLP
    970 Summer Street
    Stamford, CT  06905
    (203) 425-4200
    (203) 325-8608 (fax)
    gklein@shglaw.com
    Its Attorneys