**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DATA SUPPORT ASSOCIATES, INC : | CIVIL ACTION NO. |
|         Plaintiff, : | |
| VS. : | |
|   : | 3:02 CV 1418 (DJS) |
| MGE UPS SYSTEMS, INC. : | |
|         Defendant. : | |
|   : | |
|   : | |
|   : | |
| MGE UPS SYSTEMS, INC. : | |
|         Third Party Plaintiff, : | |
|   : | |
| VS. : | |
|   : | |
| ENERSYS, INC., : | |
|         Third Party Defendant. : | |
|   : | MARCH 25, 2004 |
|   : | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S AND THIRD PARTY**
**DEFENDANT'S MEMORANDA REGARDING EVIDENTIARY PROBLEMS**

Pursuant to this Court's Joint Trial Memorandum Order, the Plaintiff hereby responds to the Defendant MGE UPS Systems, Inc.'s ("MGE") and Enersys, Inc.'s ("Enersys") Memoranda regarding evidentiary issues.

**ARGUMENT**

1. **THE COURT SHOULD ADMIT THE OPINIONS, OBSERVATIONS, AND CONCLUSIONS OF WILLIAM WHITCOMB.**

As MGE points out, it originally delivered the subject battery systems and other reserve power equipment in the spring of 2001 for installation and startup. It is undisputed that as part of its multi-million dollar purchase order, Plaintiff Data Support Associates, Inc. ("DSA") paid MGE for installation, start-up and site acceptance tests. That is, the parties agreed that MGE had the responsibility of installing and starting up the systems, to allow DSA the opportunity to analyze whether the equipment worked properly and thereafter accept the equipment. MGE's efforts to get the battery systems to work properly failed time and again from spring 2001 forward, culminating in the April 2002 acceptance test undertaken by MGE.

After performing the April 2002 site acceptance test, MGE issued a "Battery Commissioning Report", which was to serve as its purported written confirmation to DSA that the battery systems met the requirements of DSA, the customer. Prior to April 2002, MGE had never asserted that the battery systems were ready for use and compliant with the specifications. Therefore, there was no "site acceptance test" to allow DSA the opportunity to accept the Battery Systems.

In light of the year long debacle of battery failures, DSA hired William

Whitcomb's ("Whitcomb") firm, EYP Mission Critical Facilities, Inc., to observe the April 2002 site acceptance test and independently to verify MGE's conclusions. At the time of Whitcomb's analysis, there was no litigation pending between the parties and none threatened. Therefore, Whitcomb was not and is not a traditional "retained expert" (like MGE's and Enersys' experts). Rather, Whitcomb's opinions and report were issued at the time of MGE's site acceptance test and based upon the same data as MGE's site acceptance test. Shortly after DSA received MGE's Battery Commissioning Report and the conclusions of MGE and Whitcomb, DSA issued its written rejection of the Battery Systems.

Enersys and MGE are deathly afraid of Whitcomb and his conclusions because, unlike the hired guns that MGE and Enersys have disclosed as experts—who had no involvement in the underlying transaction—Whitcomb is a "matter of fact" scientist that observed the acceptance test of the Battery Systems and issued a contemporaneous report with conclusions. DSA did not "specially retain" Whitcomb to re-invent the facts and to spin a defense. Rather, Whitcomb's opinions and report are based upon his review and observations of the start-up and acceptance test performed by MGE in April 2002.

A careful review of MGE's and Enersys' Memoranda makes it clear that Whitcomb's testimony survives their *Daubert* challenge.

### A. Whitcomb Used the Correct Specifications.

DSA claims that the Battery Systems failed to meet the specifications set forth by MGE in its Bill of Materials ("BOM") and by DSA in its Purchase Order ("PO"). That specification (attached to MGE's Memorandum as Exhibit C) required Battery Systems that performed as follows:

> **10 minute 20-year sealed cell Stackable battery system** to support a 720kW inverter load consisting of the following:
>
> Yuasa Battery System consisting of two hundred forty (240) DDS-125-31 stackable sealed lead acid batteries assembled in steel encased polypropylene flame retardant jars. Absorbed glass mat, calcium alloy grid battery *rated at 3.168KW[1] per cell (753.9kWB) at ten (10) minutes rate to 1.67vpc* in 1.3 S.G. at 77 degrees F. The cells are mounted in an epoxy coated steel frame and shipped complete with lead plated copper inter-unit connectors; grade 316 stainless steel connector nuts, bolts, and washers; cell number set; NO-ox grease and an O & I manual.

(emphasis added)(the "BOM Specification"). This specification, set forth in the BOM, simply incorporates the Enersys manufacturer's specification for the Battery System (attached to MGE Memorandum as Exhibit D). The manufacturer's specification states that these Battery Systems will provide 3.186KW per cell for ten minutes, with a minimum end cell voltage of 1.67 volts per cell (the "Enersys Specification").

MGE and Enersys claim in their Memoranda that Whitcomb's use of the Enersys

4

Specification in analyzing the testing performed by MGE's personnel at the acceptance was improper because the Enersys Specification is different from the BOM Specification. A quick review of the two specifications reveals that MGE and Enersys are wrong. Both the BOM Specification and the Enersys Specification mandate that the Battery System operate at 3.186KW per cell for ten minutes. Further, both specifications require that, at the end of 10 minutes, the cells do not drop lower than 1.67 volts per cell. Whitcomb concluded that the Battery Systems do not meet either of these specifications. In summary, Whitcomb concluded that when the Battery Systems discharged for 10 minutes after maintaining 3.186KW per cell, they fail to meet either specification because the Battery Systems' voltage drops below 1.67 volts per cell. In reaching this conclusion, Whitcomb analyzed the same data that MGE's field technician used[2] and, in fact, reached the same conclusion as to the performance of the Battery Systems in terms of the result. Where Whitcomb and MGE/Enersys diverge is on the interpretation of this data and on the ultimate conclusion. Whitcomb concluded that the Battery Systems failed to meet these specifications. MGE's technician, Patrick Aschoff, concluded that the Battery

---

[1] There is no dispute that this 3.168 figure is a typographical error in the BOM and that the number should be 3.186.

[2] Inexplicably, MGE claims on Page 11 of its Memoranda that Whitcomb's data was "materially different" from the data relevant to the facts of the case. This point is a mistake at best and a misrepresentation to this Court at worst. There is no dispute anywhere in Whitcomb's report or deposition that he rendered his opinions based upon the exact same data that MGE's field personnel used in rendering their own report.

Systems were functioning properly. Thus, Whitcomb's use of the Enersys Specification (which is really just a different version of the BOM Specification) does not disqualify his opinion.

### B.     Whitcomb's Opinion Was Rendered at the Relevant Time.

MGE and Enersys also argue that Whitcomb's conclusions are irrelevant because they relate to the condition of the Battery Systems in April 2002, not October 2000. There is no evidence that DSA accepted anything in October 2000, or at any other time. As the evidence at trial will show, the September 28, 2000 letter attached to MGE's Memorandum as Exhibit A, does not evidence acceptance. That letter is limited by other written communications from DSA and, more importantly by the contract documents which require a site acceptance test to determine that the equipment all complied with the specifications. Thus, the only relevant time period for assessing the performance of the equipment is *after installation and the site acceptance test.* Prior to April 2002, MGE's own personnel consistently admitted (and even argued) that the Battery Systems were not ready for use, inspection, or site acceptance testing. In fact, there is no evidence that any acceptance tests were performed prior to April 2002. Thus, the "goods" were not tendered for inspection and delivery until April 2002. Therefore, Whitcomb's opinion as of April 2002 is the only relevant opinion the Court can consider. As such, there is no

6

basis to preclude Whitcomb's opinions based upon the time it was rendered.

**2.     Sierra Technologies.**

DSA has no present intention of offering the Sierra Technologies report.

**3.     The Collateral Materials.**

Plaintiff is fully aware of the rules of evidence and understands the limitations of the hearsay rule. Obviously, if DSA tries to illicit hearsay that has no recognized exception, the Court will no doubt exclude the information. However, evidence that is not hearsay, or that falls into a hearsay exception, will obviously be admissible. DSA will offer such evidence and the Court will rule at the time. There is no basis at this time for DSA to evaluate MGE's claims regarding this evidence.

           **THE PLAINTIFF, DATA SUPPORT ASSOCIATES, INC.**

           By___/s/ Gary S. Klein_____
             Gary S. Klein (ct 09827)
             Sandak Hennessey & Greco, LLP
             970 Summer Street
             Stamford, CT  06905
             (203) 425-4200
             (203) 325-8608 (fax)
             gklein@shglaw.com
             Its Attorneys

## **CERTIFICATION**

      I certify that a copy of the foregoing was sent via first class mail on March 25, 2004 to:

Michael P. Shea, Esq.
Day Berry & Howard
CityPlace I
Hartford, CT 06103

Bradford S. Babbitt, Esq.
Robinson & Cole, LLP
280 Trumbull Street
Hartford, CT 06103-3597

Daniel B. Huyett, Esq.
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603-0679

                                                      /s/ Gary S. Klein
                                                          Gary S. Klein