## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DATA SUPPORT ASSOCIATES, INC | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| VS. | : | |
| | : | 3:02 CV 1418 (EBB) |
| MGE UPS SYSTEMS, INC. | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |
| MGE UPS SYSTEMS, INC. | : | |
| Third Party Plaintiff, | : | |
| | : | |
| VS. | : | |
| | : | |
| ENERSYS, INC., | : | |
| Third Party Defendant. | : | |
| | : | OCTOBER 4, 2004 |

## FOURTH AMENDED ANSWER, SEPARATE AND ADDITIONAL DEFENSES, AND COUNTERCLAIMS

Defendant MGE UPS Systems, Inc. ("MGE") hereby answers the First Amended

Complaint of Data Support Associates, Inc. ("DSA") (the "Complaint") as follows:

## THE PARTIES

1.     Upon information and belief, MGE admits the allegations of Paragraph 1.

2.     MGE admits that it is a California corporation with its principal place of business in

California.  Except as specifically admitted herein, MGE denies each and every allegation of

Paragraph 2.

## JURISDICTION AND VENUE

3.    MGE admits that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 3.

4.    MGE admits venue is proper in this judicial district.

## ANSWER TO FIRST CAUSE OF ACTION

5.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 5.

6.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 6.

7.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7.

8.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8.

9.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9.

10.    MGE admits that DSA has purchased certain products from MGE and resold them. As to the remaining allegations of Paragraph 10 of the Complaint, MGE lacks knowledge or information sufficient to form a belief as to the truth of such allegations.

11.    MGE admits the allegations of Paragraph 11.

12.    MGE admits that on occasion it acts as a reseller of the products of other companies. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 12.

13.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 13.

14.    MGE admits the allegations of Paragraph 14.

15.    MGE admits that the Battery System is an element of the system DSA sought to purchase from MGE for the Globix Corporation sites. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 15.

16.    MGE admits that from time to time it resells batteries manufactured by Enersys, Inc. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 16.

17.    MGE admits that DSA provided it with certain specifications for the Battery System. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 17.

18.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 18.

19.    MGE admits that it delivered a document entitled, "Bill-Of-Material" dated April 7, 2000 ("BOM") to DSA. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 19.

20.    MGE alleges that the BOM is the best evidence of its contents. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 20.

21.    MGE alleges that the BOM is the best evidence of its contents. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 21.

22.    MGE alleges that the BOM is the best evidence of its contents. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 22.

23.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 23.

24.    MGE lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 24.

25.    MGE admits that in or around April 2000, MGE and DSA entered into a Purchase Order ("PO"). MGE alleges that the PO is the best evidence of its contents. Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 25.

26.    MGE alleges that the PO is the best evidence of its contents, and denies that DSA fully performed under the PO. Except as specifically alleged herein, MGE denies each and every allegation of Paragraph 26.

4

27.    MGE alleges that the PO is the best evidence of its contents.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 27.

28.    MGE alleges that the PO is the best evidence of its contents.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 28.

29.    MGE alleges that the PO is the best evidence of its contents.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 29.

30.    MGE alleges that the PO is the best evidence of its contents.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 30.

31.    MGE denies each and every allegation of Paragraph 31.

32.    MGE admits that it procured the Battery System from Enersys.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 32.

33.    MGE denies each and every allegation of Paragraph 33.

34.    MGE denies each and every allegation of Paragraph 34.

35.    MGE denies each and every allegation of Paragraph 35.

36.    MGE admits that DSA has purported to allege in this lawsuit that the Battery System did not conform to certain specifications.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 36.

37.    MGE denies each and every allegation of Paragraph 37.

38.    MGE denies each and every allegation of Paragraph 38.

39.    MGE denies each and every allegation of Paragraph 39.

40.    MGE denies each and every allegation of Paragraph 40.

41.    MGE denies each and every allegation of Paragraph 41.

42.    MGE denies each and every allegation of Paragraph 42.

**ANSWER TO SECOND CAUSE OF ACTION**

43.    MGE repeats and realleges its answers to Paragraphs 1-12 of the Complaint as if fully set forth herein.

44.    MGE admits that on or about November 1, 1996, MGE, then known as EPE Technologies, Inc., and DSA entered into a Sales Representative Agreement (the "First Rep Agreement"), which speaks for itself.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 44.

45.    MGE admits that from time to time MGE and DSA modified the First Rep Agreement, which speaks for itself.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 45.

46.    MGE admits that on or about April 9, 2001, MGE and DSA entered into a Master Sales Representative Agreement (the "Second Rep Agreement"), which speaks for itself.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 46.

47.    MGE alleges that the First Rep Agreement and the Second Rep Agreement (together the "Rep Agreements") are the best evidence of their contents.  Except as specifically alleged herein, MGE denies each and every allegation of Paragraph 47.

48.    MGE admits that from time to time DSA sold MGE products to end users.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 48.

49.    MGE alleges that the Rep Agreements are the best evidence of their contents.  Except as specifically alleged herein, MGE denies each and every allegation of Paragraph 49.

50.    MGE admits that from time to time DSA sold MGE products to end users.  Except as specifically admitted herein, MGE denies the allegations of Paragraph 50.

51.    MGE admits that it paid commissions to DSA in connection with certain sales of MGE products to end users.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 51.

52.    MGE admits that it terminated the Second Rep Agreement.  Except as specifically admitted herein, MGE denies each and every allegation of Paragraph 52.

53.    MGE denies each and every allegation of Paragraph 53.

54.    MGE denies each and every allegation of Paragraph 54.

55.    MGE denies each and every allegation of Paragraph 55.

## SEPARATE AND ADDITIONAL DEFENSES

### FIRST SEPARATE AND ADDITIONAL DEFENSE

56.    As a first separate and additional defense to the Complaint herein, MGE alleges that the Complaint and each claim for relief thereof fails to state a claim upon which relief can be granted.

### SECOND SEPARATE AND ADDITIONAL DEFENSE

57.    As a second separate and additional defense to the Complaint herein, MGE alleges that any such claims are barred by all applicable statutes of limitation.

### THIRD SEPARATE AND ADDITIONAL DEFENSE

58.    As a third separate and additional defense to the Complaint herein, MGE alleges that DSA has failed to mitigate its damages, if any there be, a matter which MGE denies, and therefore is barred, in whole or in part, from any recovery in this action.

### FOURTH SEPARATE AND ADDITIONAL DEFENSE

59.    As a fourth separate and additional defense to the Complaint herein, MGE alleges that the damages or injuries allegedly suffered by DSA, either in whole or in part, are the result of an intervening or independent cause, including but not limited to the actions of third parties and/or DSA, and are not the result of an act or omission on the part of MGE. As such, recovery against MGE is barred, either in whole or in part.

### FIFTH SEPARATE AND ADDITIONAL DEFENSE

60.     As a fifth separate and additional defense, MGE alleges that DSA has engaged in a course of conduct whereby it caused or contributed to, either in whole or in part, the damages alleged herein.  As such, DSA's recovery is barred or limited to the extent it was the cause of or contributed to the damage alleged.

## SIXTH SEPARATE AND ADDITIONAL DEFENSE

61.     As a sixth separate and additional defense, MGE alleges that DSA has waived and/or is estopped from asserting its claims herein.

## SEVENTH SEPARATE AND ADDITIONAL DEFENSE

62.     As a seventh separate and additional defense, MGE alleges that DSA engaged in wrongful conduct more specifically alleged in the Counterclaims of MGE and that any recoveries by DSA herein, if any, must be offset by that amount alleged in the Counterclaims.

## EIGHTH SEPARATE AND ADDITIONAL DEFENSE

63.     As a eighth separate and additional defense, MGE alleges that DSA's claims and remedies are barred by the doctrine of laches.

## NINTH SEPARATE AND ADDITIONAL DEFENSE

64.     As a ninth separate and additional defense, MGE alleges that DSA has ratified and consented to the transactions set forth in the Complaint.

### TENTH SEPARATE AND ADDITIONAL DEFENSE

65.    As a tenth separate and additional defense, DSA lacks standing as to all or a portion of its claims.

### PRAYER FOR RELIEF

WHEREFORE, MGE prays for the following:

1.    That DSA take nothing by reason of its complaint;

2.    That the Complaint be dismissed with prejudice;

3.    That MGE be awarded its costs incurred herein, including attorneys' fees; and

4.    For such other and further relief as this Court may deem just and proper.

### COUNTERCLAIMS

Defendant and Counter-Claimant MGE UPS Systems, Inc. ("MGE") alleges as follows in its Counterclaim against Plaintiff and Counter-Defendant Data Support Associates, Inc. ("DSA"):

### PRELIMINARY STATEMENT

1.    The claims for relief alleged in this Counterclaim arise out of DSA's status as a sales representative of MGE. That relationship recently ended. In connection with the termination of that relationship, however, DSA has undertaken a pattern of wrongful conduct that spans the gamut from failure to pay on a promissory note to the failure to pay rent for its lease of office space in New York to its fraudulent promise to pay for goods ordered from MGE. By this Counterclaim, MGE seeks redress for those wrongful acts.

## JURISDICTION

2.    Jurisdiction of this Court is founded on diversity of citizenship pursuant to 28 U.S.C. § 1332.

3.    At all times herein mentioned, MGE was and is a California corporation with its principal place of business in California.

4.    In its Complaint, DSA has admitted, and MGE thereupon alleges, that at all times herein mentioned, DSA was and is a Connecticut corporation with its principal place of business in Connecticut.

5.    Thus, there is complete diversity of citizenship between MGE and DSA. Additionally, the amount in controversy, exclusive of interest and costs, exceeds $75,000.

## VENUE

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

7.    MGE is a California corporation with its principal place of business in California. MGE is a global provider of power quality solutions designed to increase the availability and uptime of mission-critical applications or processes, from a simple desktop PC to a large internet data center or a semi-conductor manufacturing plant.

8.    In its Complaint, DSA has admitted, and MGE thereupon alleges, that it is a Connecticut corporation with its principal place of business in Connecticut. DSA has also

admitted it is a company specializing in electrical/mechanical products and services related to the critical power and environmental fields.

## FIRST COUNTERCLAIM

### (BREACH OF PROMISSORY NOTE)

9.    MGE hereby incorporates by reference and realleges Paragraphs 1 through 8 of this Counterclaim as though fully set forth herein.

10.    On or about August 8, 2001, MGE loaned DSA $535,041.95 and DSA executed and delivered its secured promissory note (the "Promissory Note") to MGE in the amount of $535,041.95. A true and correct copy of the Promissory Note is attached hereto as Exhibit A.

11.    The Promissory Note provides that interest was to be paid from the date of the Note on the unpaid principal balance at the rate of 6.75% per annum.

12.    DSA agreed to repay the entire principal balance, together with all accrued and unpaid interest, by August 7, 2002.

13.    Under the terms of the Promissory Note, DSA granted MGE a first priority purchase money security interest in certain products that MGE had sold to DSA that DSA was holding as inventory for sale to its customers, including but not limited to, twenty-six strings of Yuasa 20-year maintenance free DD sealed batteries, 50 Vanner battery monitors, and 30 Enviroguard still containment systems.

14.    DSA also agreed under the Promissory Note to pay all reasonable costs and expenses, including reasonable attorneys' fees and costs, should MGE prevail in a dispute regarding the rights and obligations of the parties under the Promissory Note.

15.    On August 7, 2002, the Promissory Note became due and payable, and DSA was obligated to pay to MGE $535,041.95, plus all accrued and unpaid interest.

16.    DSA has failed and refused to repay the amount due under the Promissory Note or any part thereof, despite demand that it do so.

17.    MGE has performed all of its duties and obligations required of it to be performed except as any such duties and obligations have been excused.

18.    As a direct and proximate result of DSA's default on the Promissory Note, MGE has suffered and will suffer damages of $535,041.95 plus interest, which continues to accrue at the rate of 6.75% per annum.

## SECOND COUNTERCLAIM

### (BREACH OF CONTRACT)

19.    MGE hereby incorporates by reference and realleges Paragraphs 1 through 8 of this Counterclaim as though fully set forth herein.

20.    On or about July 11, 2002, DSA issued Purchase Order No. 0000235 to MGE for the sale of goods in the amount of $48,425.  A true and correct copy of the purchase order issued by DSA on July 11, 2002 is attached hereto as Exhibit B.

21.     On or about August 7, 2002, DSA issued another Purchase Order No. 0000256 to MGE for the sale of goods in the amount of $41,573.  A true and correct copy of the purchase order issued by DSA on August 7, 2002 is attached hereto as Exhibit C.

22.     MGE placed Purchase Orders No. 0000235 and No. 0000256 (collectively, the "Purchase Orders") issued by DSA on credit hold due to the failure of DSA to make payment on certain outstanding receivables due and owing to MGE for the sale of other goods.

23.     In order to induce MGE to release the Purchase Orders from credit hold, DSA agreed to pay 90% of the amount of the Purchase Orders, if MGE would ship the goods on the Purchase Orders upon receipt of that payment.  DSA also agreed to pay the remaining balance due on the Purchase Orders within 30 days.

24.     On September 6, 2002, DSA tendered to MGE a check made payable to MGE in the amount of $80,998.22, which sum represented 90% of the sum owing on the Purchase Orders. Attached hereto as Exhibit D is a true and correct copy of the check in the sum of $80,998.20 and an enclosure letter from DSA to MGE dated September 6, 2002, evidencing the agreement between MGE and DSA.

25.     Upon receipt of DSA's check in the sum of $80,998.20, MGE shipped the goods identified in the Purchase Orders.  MGE shipped the goods identified by Purchase Order No. 0000235 on September 6 and the goods identified by Purchase Order No. 0000256 on September 12.

26.     On or about September 18, 2002, after the goods had been shipped, MGE's bank returned DSA's check to MGE marked "unpaid."  The check was returned because DSA placed a "stop payment" on the check.  Attached hereto as Exhibit E is a true and correct copy of that returned check.

27.     MGE has performed all of its duties and obligations under the agreement except as excused.

28.     As a direct and proximate result of DSA's failure to pay for the goods shipped on the Purchase Orders, MGE has suffered damages in at least the amount of $89,998.  MGE will seek leave of Court to insert the sums as proved at time of trial.

### THIRD COUNTERCLAIM

### (FRAUD)

29.     MGE hereby incorporates by reference and realleges Paragraphs 1 through 8 and 20 through 28 of this Counterclaim as though fully set forth herein.

30.     In order to induce MGE to ship the goods identified in the Purchase Orders, DSA promised to pay 90% of the total sum of the Purchase Orders upon the shipment of the goods and the remaining 10% within 30 days.

31.     These promises were false when made in that DSA had no intention of paying for those goods when and as it promised to do so.  DSA made its false promises for the purpose of deceiving and inducing MGE into shipping the goods identified in the Purchase Orders.

32.     In reasonable reliance upon DSA's false promises to pay for the goods, MGE shipped the goods.  MGE, at the time the promises were made, was ignorant of their falsity and reasonably relied on the promises of DSA.  Had MGE known of the true facts, MGE never would have shipped the goods.

33.     As a result of the fraudulent conduct of DSA, MGE has suffered damages at least in the amount of $ 89,998.  MGE will seek leave of Court to insert the sums as proved at time of trial.

34.     DSA made its fraudulent promises willing, knowingly, intentionally, maliciously and with conscious disregard for the rights of MGE.  As such, MGE is entitled to punitive damages against DSA in an appropriate amount to be ascertained at trial.

## FOURTH COUNTERCLAIM

### (BREACH OF CONTRACT)

35.     MGE hereby incorporates by reference and realleges Paragraphs 1 through 8 of this Counterclaim as though fully set forth herein.

36.     On or about May 1, 2001, MGE and DSA entered into a written sublease (the "Sublease") for a certain portion of the premises located at 520 Eighth Avenue, Part 21st floor, New York, New York (the "Premises").  A true and correct copy of the Sublease is attached hereto as Exhibit F.

37.     The term of the Sublease commenced on May 1, 2001 and ends on April 30, 2004.

38.    Under the terms of the Sublease, DSA was required to pay base monthly rent in the sum of $4,266.67 for the first 12 months of the term; $4,526.51 for the next 12 months of the term; and $4,662.31 for the final 12 months of the term.

39.    In addition, DSA was required to pay its proportionate share of 16% of the additional costs associated with the Premises as identified in Section 12 of the Sublease.

40.    DSA failed and refused to pay its September 2002 rent in the sum of $5,541.35, despite notice from MGE of its default under the Sublease.

41.    Furthermore, in or about September 2002, DSA abandoned the Premises.

42.    Rent for the remaining term of the Sublease is in excess of $92,159.80, excluding DSA's proportionate share of 16% of the additional costs identified in Section 12 of the Sublease.

43.    The Sublease contains an attorneys' fee provision at Section 10 which provides that in an action to enforce the terms of the Sublease, the prevailing party in any such action shall be entitled to its reasonable attorneys' fees from the losing party.

44.    DSA has breached the Sublease by failing to pay for its September 2002 rent and by abandoning and vacating the Premises.

45.    As a direct and proximate result of DSA's breach of the Sublease, MGE has been damaged in an amount in excess of $92,000. MGE will seek leave of Court to insert the sums as proved at time of trial.

## FIFTH COUNTERCLAIM

**(BREACH OF CONTRACT)**

46.    MGE hereby incorporates by reference and realleges Paragraphs 1 through 8 of this Counterclaim as though fully set forth herein.

47.    Over the course of late 2001 and 2002, DSA issued the following Purchase Orders to MGE for the sale of goods and/or provision of services in the total amount of $337,398.88: 0000199, S2080, S2102, S2064, S2074, S2108, 0000211, S2107, 0000246, 0000247, 0000264, S2128, S2129, S2119, S2120, S2132, S2118, S2121, 0000057, 0000235, S2065, S2077, 0000256, S2126, 0000296. DSA also issued two Purchase Orders to MGE that MGE designated "JOHN RAIO" and "ULTIMATE CONTRA."

48.    In response to each Purchase Order, MGE shipped the goods identified in the Purchase Order and/or provided the services requested and issued an invoice to DSA under which DSA was contractually required to pay for all goods and/or services within 30 days of the invoice date. MGE issued the following invoices to DSA:

➤ In response to Purchase Order Number 0000199, MGE issued Invoice Number 208121 on June 8, 2002, in the amount of $5,386.50.

➤ In response to a Purchase Order designated "JOHN RAIO" by MGE, MGE issued Invoice Number 208769 on June 25, 2002, in the amount of $5,828.04.

➤ In response to Purchase Order Number S2080, MGE issued Invoice Number 209108 on June 28, 2002, in the amount of $2,621.60.

18

➢ In response to Purchase Order Number S2102, MGE issued Invoice Number 209229 on June 28, 2002, in the amount of $8,802.28

➢ In response to Purchase Order Number S2064, MGE issued two invoices: Invoice Number 209306 on June 28, 2002, in the amount of $33,394.24; and Invoice Number 209461 on June 28, 2002, in the amount of $10,252.80.

➢ In response to Purchase Order Number S2074, MGE issued Invoice Number 209307 on June 28, 2002, in the amount of $5,118.40.

➢ In response to Purchase Order Number S2108, MGE issued Invoice Number 210722 on July 24, 2002, in the amount of $3,324.00.

➢ In response to Purchase Order Number 0000211, MGE issued Invoice Number 210837 on July 25, 2002, in the amount of $1,893.15.

➢ In response to Purchase Order Number S2107, MGE issued Invoice Number 210858 on July 25, 2002, in the amount of $5,447.20.

➢ In response to Purchase Order Number 0000246, MGE issued Invoice Number 211083 on July 27, 2002, in the amount of $140.00.

➢ In response to Purchase Order Number 0000247, MGE issued Invoice Number 211289 on July 31, 2002, in the amount of $98.70.

➢ In response to Purchase Order Number 0000264, MGE issued Invoice Number 212705 on August 24, 2002, in the amount of $8,197.00.

> ➢ In response to Purchase Order Number S2128, MGE issued Invoice Number 212777 on August 27, 2002, in the amount of $8,579.20.

> ➢ In response to Purchase Order Number S2129, MGE issued Invoice Number 212778 on August 27, 2002, in the amount of $30,799.02.

> ➢ In response to Purchase Order Number S2119, MGE issued Invoice Number 212874 on August 28, 2002, in the amount of $3,813.60.

> ➢ In response to Purchase Order Number S2120, MGE issued Invoice Number 212875 on August 28, 2002, in the amount of $8,665.60.

> ➢ In response to Purchase Order Number S2132, MGE issued Invoice Number 212876 on August 28, 2002, in the amount of $3,813.60.

> ➢ In response to Purchase Order Number S2118, MGE issued Invoice Number 213393 on August 30, 2002, in the amount of $1,310.66.

> ➢ In response to Purchase Order Number S2121, MGE issued Invoice Number 213415 on August 30, 2002, in the amount of $5,686.28.

> ➢ In response to Purchase Order Number 0000057, MGE issued Invoice Number 213595 on September 5, 2002, in the amount of $40,590.56.

> ➢ In response to Purchase Order Number 0000235, MGE issued Invoice Number 213691 on September 10, 2002, in the amount of $50,334.91.

> In response to Purchase Order Number S2065, MGE issued two invoices: Invoice Number 213811 on September 11, 2002, in the amount of $3,868.32; and Invoice Number 213812 on September 11, 2002, in the amount of $3,980.00.

> In response to Purchase Order Number S2077, MGE issued Invoice Number 213892 on September 12, 2002, in the amount of $37,040.50.

> In response to Purchase Order Number 0000256, MGE issued two invoices: Invoice Number 213932 on September 14, 2002, in the amount of $42,622.91; and Invoice Number 214340 on September 21, 2002, in the amount of $765.25.

> In response to Purchase Order Number S2126, MGE issued Invoice Number 214142 on September 18, 2002, in the amount of $2,359.80.

> In response to a Purchase Order designated "ULTIMATE CONTRA" by MGE , MGE issued Invoice Number 215007 on September 30, 2002, in the amount of $3,098.76.

> In response to Purchase Order Number 0000296, MGE issued Invoice Number 215015 on September 30, 2002, in the amount of $231.63.

True and correct copies of the MGE invoices are attached hereto as Exhibit G.

49.    Three of the invoices mistakenly listed freight charges twice. MGE has omitted the second charges and credited DSA's account. Accordingly, the revised amounts now due on those three invoices are:

> $8,473.54 is due on Invoice Number 209229, reflecting a credit of $328.74.

> $1,029.31 is due on Invoice Number 213393, reflecting a credit of $281.35.

> $5,630.74 is due on Invoice Number 213415, reflecting a credit of $55.54.

50.    Each 30-day payment period has elapsed, and DSA has failed to make any of the required payments.  It now owes MGE payments on these invoices in the amount of $337,398.88.

51.    MGE has performed all of its duties and obligations as required by the terms of the Purchase Orders.

52.    As a direct and proximate result of DSA's failure to pay for the goods shipped and/or services provided on the Purchase Orders, MGE has suffered damages in at least the amount of $337,398.88.  MGE will seek leave of Court to insert the sums as proved at time of trial.

## SIXTH COUNTERCLAIM

### (BREACH OF CONTRACT)

53.    MGE hereby incorporates by reference and realleges Paragraphs 1 through 8 of this Counterclaim as though fully set forth herein.

54.    On April 10, 2000, DSA issued Purchase Order Number 2807 (the "Purchase Order") to MGE for the sale of goods and/or provision of services in the total amount of $25,967,612.00.  A copy of this Purchase Order is attached to DSA's Second Amended Complaint as Exhibit B.

55.    In response to the Purchase Order, MGE provided the goods and/or services requested by DSA.

56.    On August 3, 2001, MGE sent an e-mail to DSA stating that DSA had not paid for $535,041.95 in goods and charges pursuant to the Purchase Order. A true and accurate copy of this e-mail is attached hereto as Exhibit H.

57.    DSA has failed to make the required payment.

58.    MGE has performed all of its duties and obligations as required by the Purchase Order except as excused.

59.    As a direct and proximate result of DSA's failure to pay for the goods and charges provided under the Purchase Order, MGE has suffered damages in at least the amount of $535,041.95. MGE will seek leave of Court to insert the sums as proved at time of trial.

WHEREFORE, Defendant and Counter-Claimant MGE prays for judgment against Plaintiff and Counter-Defendant DSA as follows:

## ON THE FIRST COUNTERCLAIM

1.    For damages according to proof, together with interest thereon at the rate of 6.75% per annum until the date judgment is entered; and

2.    For reasonable attorneys' fees and costs.

## ON THE SECOND COUNTERCLAIM

1.    For damages according to proof with interest thereon, as provided by law.

## ON THE THIRD COUNTERCLAIM

1.    For damages according to proof with interest thereon, as provided by law; and

2.    For punitive and exemplary damages.

## ON THE FOURTH COUNTERCLAIM

1.    For damages according to proof with interest thereon, as provided by law; and

2.    For reasonable attorneys' fees and expenses.

## ON THE FIFTH COUNTERCLAIM

1.    For damages according to proof with interest thereon, as provided by law.

## ON THE SIXTH COUNTERCLAIM

1.    For damages according to proof with interest thereon, as provided by law.

2.    For reasonable attorneys' fees, applicable interest and expenses.

## <u>ON ALL COUNTERCLAIMS</u>

1.    For costs; and

2.    For such other and further relief as this Court may deem just and equitable.

DEFENDANT,
MGE UPS SYSTEMS, INC.

By: _____
    Michael P. Shea (ct#19598)
    Mitchell R. Harris, (ct#09216)
    Jason S. Weathers (ct#24579)
    Day, Berry & Howard LLP
    CityPlace I
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    Its Attorneys

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed on this date by regular first class mail to all counsel and pro se parties as follows:

Gary S. Klein, Esq.
Sandak Hennessey & Greco, LLP
970 Summer Street
Stamford, CT  06905

Bradford S. Babbitt, Esq.
Robinson & Cole
280 Trumbull St.
Hartford, CT 06103-3597

Daniel Huyett, Esq.
Stevens & Lee
111 North Sixth Street
P.O. Box 679
Reading, PA 19603

Patrick J. McHugh, Esq.
Finn, Dixon & Herling LLP
One Landmark Square
Suite 1400
Stamford, CT  06901-2689

Michael P. Shea