SUBLEASE

1.  Parties. This Sublease, dated, for reference purposes only, __May 1__, 2001, is made by and between MGE UPS Systems, Inc., a corporation organized under the laws of the State of California ("Sublessor") and Data Support Associates, Inc a ~~Corporation~~ organized under the laws of ___Connecticut___ ("Sublessee").

2.  Subleased Premises. Sublessor hereby subleases to Sublessee and Sublessee hereby subleases from Sublessor for the term, at the rental, and upon all of the conditions set forth herein, that certain portion of the premises which is shown on the attached plan as cross-hatched and shaded in ("Subleased Premises") and is a part of Part 21st Floor, which is shown on the attached plan as cross-hatched ("Leased Premises"), in the building known as 520 Eighth Avenue, 266 West 37th Street & 261 West 36th Street in the Borough of Manhattan, City of New York, State of New York.

3.  Term.

    3.1  Term. The term of this Sublease shall be for thirty-six (36) months, commencing on May 1, 2001 and ending on April 30, 2004, unless sooner terminated pursuant to any provision hereof.

    3.2  Delay in Commencement. Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Subleased Premises by the commencement date. If, despite said efforts, Sublessor is unable to deliver possession as agreed, Sublessor shall not be subject to any liability therefor, nor shall such failure affect the validity of this Sublease. Sublessee shall not, however, be obligated to pay Rent or perform its other obligations until it receives possession of the Subleased Premises. If possession is not delivered within sixty days after the commencement date, Sublessee may, at its option, by notice in writing within ten days after the end of such sixty day period, cancel this Sublease, in which event the Parties shall be discharged from all obligations hereunder. If such written notice is not received by Sublessor within said ten day period, Sublessee's right to cancel shall terminate. If possession is not delivered within 120 days after the commencement date, this Sublease shall automatically terminate unless the Parties agree, in writing, to the contrary.

4.  Rent.

    4.1  Base Rent. Sublessee shall pay to Sublessor as Base Rent for the Subleased Premises equal monthly payments of $4,266.67 in advance, on the 1st day of each month of the term hereof, without set off or deduction whatsoever. Sublessee agrees to pay to Sublessor a three percent (3%) increase in Base Rent in each and every year during the term of this Sublease. For the first 36 months of this Sublease, the schedule for the Base Rent is as follows:

    | Months  | Base Rent  |
    |---------|------------|
    | 1 – 12  | $4,394.67  |
    | 13 – 24 | $4,526.51  |
    | 25 – 36 | $4,662.31  |

Base Rent for any period during the term hereof which is for less than one month shall be a pro rata portion of the monthly installment.

_2001,
/s of the
~on~

hereby
i herein,
ned and
attached
ue, 266
State of




months,
suant to


ercially
nt date.
l not be
iblease.
'l it
iys
days
;nall be
iblessor
 is not
atically





bleased
i of the
lessor a
iblease.




)e a pro

Rent Defined. All monetary obligations of Sublessee to Sublessor under the Sublease (except for the Security Deposit) are deemed to be rent ("Rent"). Rent ble in lawful money of the United States to Sublessor at the address stated herein or persons or at such other places as Sublessor may designate in writing, without set ion for any reason.

rity Deposit. Sublessee shall deposit with Sublessor upon execution hereof security for Sublessee's faithful performance of Sublessee's obligations hereunder. d obligations of Sublessor and Sublessee as to said Security Deposit shall be as set graphs 34 and 62 of the Master Lease (as modified by Paragraph 7.3 of this



Agreed Use. The Sublessed Premises shall be used and occupied only for xecutive offices and for no other purpose, in accordance with Paragraph 41 of the


As-Is. Sublessee has examined and inspected the Subleased Premises and rees to accept said Subleased Premise in their as-is condition existing on the nt date.

Acceptance of Subleased Premises. Sublessee acknowledges that:

(a) it has been advised to satisfy itself with respect to the condition of the mises (including but not limited to the electrical, HVAC and fire sprinkler systems, ronmental aspects and compliance with all applicable covenants or restrictions of plicable building codes, regulations and ordinances ["Applicable Requirements"]), bility for Sublessee's intended use.

(b) Sublessee has made such investigation as it deems necessary with such matters and assumes all responsibility therefor as the same relate to its the Subleased Premises, and

(c) neither Sublessor, Sublessor's agents, Master Lessor, Master Lessor's y broker has made any oral or written representations or warranties with respect to ther than as set forth in this Sublease.

:r Lease.

Master Lease. Sublessor is the lessee (also known as Tenant) of the Leased vhich the Subleased Premises form a part by virtue of a lease, hereinafter the ;e", a copy of which is attached hereto marked Exhibit 1, wherein Newmark & d Estate, Inc., Agent For: 520 Eighth Avenue, LLC, is the lessor (also known as dlord), hereinafter called the "Master Lessor".

Subordination. This Sublease is and shall be at all times subject and the Master Lease.

Controlling Terms. The terms, conditions and respective obligations of Sublessee to each other under this Sublease shall be the terms and conditions of the

Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease document shall control over the Master Lease. Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Owner" or "Landlord" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Tenant" is used it shall be deemed to mean the Sublessee herein.

7.4     Assumption of Obligations. During the term of this Sublease and for all periods subsequent for obligations which have arisen during the term of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease to the extent that such applies to the Subleased Premises (specifically or in gross or connection with the Leased Premises) except for the following paragraphs (or portions thereof) which are excluded therefrom: 51, 66, 68, 71, and the last two sentences of 49.

7.5     Further Definitions. The obligations that Sublessee has assumed under Paragraph 7.4 hereof are hereinafter referred to as the "Sublessee's Assumed Obligations". The obligations that Sublessee has not assumed under Paragraph 7.4 hereof are hereinafter referred to as the "Sublessor's Remaining Obligations".

7.6     Hold Harmless. Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, including reasonable attorneys' fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.

7.7     Sublessor's Remaining Obligations. Sublessor agrees to maintain the Master Lease during the term of this Sublease, subject, however, to any earlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.

7.8     Master Lease Validity. Sublessor represents to Sublessee that the Master Lease is in full force and effect and that no default exists on the part of any Party to the Master Lease.

8.     Assignment of Sublease and Default.

8.1     Assignment. Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject however to the provisions of Paragraph 8.2 hereof.

8.2     Default. Master Lessor, by executing this document, agrees that until a Default shall occur in the performance of Sublessor's Obligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease. However, if Sublessor shall Default in the performance of its obligations to Master Lessor then Master Lessor may, at its option, receive and collect, directly from Sublessee, all Rent owing and to be owed under this Sublease. Master Lessor shall not, by reason of this assignment of the Sublease nor by reason of the collection of the Rent from the Sublessee, be deemed liable to Sublessee for any failure of the Sublessor to perform and comply with Sublessor's Remaining Obligations.

8.3     Default: Assignment of Rent. Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master Lessor stating that a Default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the Rent due and to become due under the Sublease. Sublessor agrees that Sublessee shall

have the right to rely upon any such statement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to inquire as to whether such Default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor shall have no right or claim against Sublessee for any such Rent so paid by Sublessee.

8.4    Modifications. No changes or modifications shall be made to this Sublease without the consent of Master Lessor.

9.    Consent of Master Lessor.

9.1    Master Lessor Consent. This Sublease shall not be effective unless, within thirty days of the date hereof, Master Lessor signs this Sublease thereby giving the consent to this Subletting.

9.2    Effect of Consent. In the event that Master Lessor does give such consent then:

(a)    Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(b)    The acceptance of Rent by Master Lessor from Sublessee or anyone else liable under the Master Lease shall not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(c)    The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(d)    In the event of any Default of Sublessor under the Master Lease, Master Lessor may proceed directly against Sublessor or anyone else liable under the Master Lease or this Sublease without first exhausting Master Lessor's remedies against any other person or entity liable thereon to Master Lessor.

(e)    In the event that Sublessor shall Default in its obligations under the Master Lease, then Master Lessor, at its option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall undertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease, but Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be liable for any other Defaults of the Sublessor under the Sublease.

9.3    Evidence of Consent. The signature of the Master Lessor at the end of this document shall constitute its consent to the terms of this Sublease.

9.4    Master Lease Validity. Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no Default presently exists under the Master Lease of obligations to be performed by Sublessor or Master Lessor ant hat the Master Lease is in full force and effect.

9.5    Notice of Default. In the event that Sublessor Defaults under its obligations to be performed under the Master Lease by Sublessor, Master Lessor agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any Default of

Sublessor described in any notice of default within ten (10) days after service of such notice of default on Sublessee. If such Default is cured by Sublessee then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

10. **Attorneys' Fees.** If any party named herein brings an action to enforce the terms hereof or to declare rights hereunder, the prevailing party in any such action, on trail and appeal, shall be entitled to its reasonable attorneys' fees to be paid by the losing party as fixed by the Court.

11. **Renewal Option.** Sublessee shall have the right to renew this Sublease on the same terms and conditions stated herein for one additional 36 month term, except that the Base Rent schedule set forth in Paragraph 4.1 shall be adjusted to reflect the 3% increases in Base Rent required under the terms of Paragraph 4.1. Sublessee shall provide written notice to Sublessor specifying Sublessee's intent to exercise this option no less than 90 days and no sooner than 120 days prior to the end of the then current term.

12. **Proportionate Share.** In addition to the Base Rent, Sublessee shall be responsible for its proportionate share of utilities (including without limitation electric current, gas, water and other utilities), fuel, maintenance and repair costs, insurance required to be paid for by Sublessor under the Master Lease, any increases in real property taxes, air conditioning related costs, additional rent assessed pursuant to Paragraph 61 of the Master Lease, any services provided by Master Lessor, any costs or expenses associated with security monitoring, telephone systems, window cleaning and rubbish removal, office maintenance contractors, sorting and separation of refuse and trash, and any other costs, expenses, assessments or additional rent that is/are required to be paid by Sublessor under the terms of or in connection with the Master Lease and/or this Sublease. Sublessee's proportionate share is deemed to be 16%. Sublessee shall pay Sublessor Sublessee's proportionate share of each and every such cost, expense or assessment on or before its due date, without set off or deduction whatsoever. Sublessee shall also promptly reimburse Sublessor for the cost of furniture, cabeling, signage, office supplies, administration and any other services or supplies provided by Sublessor for Sublessee's benefit.

13. **Insurance.** Sublessee covenants to provide on or before the commencement date of the term hereof and to keep in force during the term hereof for the benefit of Master Lessor, Sublessor and Sublessee a comprehensive policy of liability insurance protecting Master Lessor, Sublessor and Sublessee against any liability whatsoever occasioned by accident on or about the Subleased Premises or any appurtenances thereto caused by Sublessee, its agents, contractors, servants, employees, licensees, or invitees. Such policy is to be written by a good and solvent insurance company satisfactory to Master Lessor and Sublessor, and the limits of liability thereunder shall not be less than the amount of One Million Five Hundred Thousand Dollars ($1,500,000) per occurrence for bodily or personal injury including death and in the amount of Five Hundred Thousand Dollars ($500,000) in respect of property damage. Such insurance may be carried under a blanket policy covering the Subleased Premises and other locations of Sublessee, if any. Such insurance shall be primary to any insurance carried by Sublessor or Master Lessor, and shall name Sublessor and Master Lessor as additional insureds. Prior to the time such insurance is first required to be carried by Sublessee and thereafter, at least fifteen days prior to the expiration of any such policy, Sublessee agrees to deliver to Sublessor a certificate evidencing such insurance, with an endorsement stating that such insurance may not be cancelled except upon thirty days' notice to Sublessor, together with evidence of payment for the policy. Sublessee's failure to provide and keep in force the aforementioned insurance shall be regarded as a material default hereunder, entitling Sublessor to exercise any or all of the remedies as provided in this Sublease in the event of Sublessee's default.

14. **Master Lessor's Attorneys' Fees.** Sublessee shall pay the reasonable costs of Master Lessor's attorneys' fees in connection with this Sublease, not to exceed $1,000.00, without set off or deduction whatsoever.

15. **No Brokers.** Each party represents and warrants that it has dealt with no broker in connection with the execution of this Sublease and agrees to hold and save the other parties harmless from and against any and all liabilities from any claims of any broker (including, without limitation, the cost of counsel fees in connection with the defense of any such claims) asserting otherwise.

16. **Further Sublease or Assignment.** Sublessee may not sublease or assign all or any portion of the Subleased Premises without Sublessor's and Master Lessor's prior written consent.

17. **Due Diligence.** Each party has been advised and given the opportunity to seek counsel as to the legal and tax consequences of this Sublease. Sublessee has been given the opportunity to retain appropriate consultants to review and investigate the condition of the Subleased Premises.

IN WITNESS WHEREOF, the parties have caused this Sublease to be executed as of the date appearing in Paragraph 1 above.

SUBLESSOR:                                           SUBLESSEE:

MGE UPS SYSTEMS, INC.                                DATA SUPPORT ASSOCIATES, INC

By: _____                          By: _____
Title: _____CFO_____                             Title: _____CEO_____

MASTER LESSOR:

NEWMARK & COMPANY REAL ESTATE, INC.
AGENT FOR: 520 EIGHTH AVENUE, LLC

By: _____
Title: _____